UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CARSON CASTELLAW, et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-CV-2116-X |
| | § | |
| LIBERTY INSURANCE COMPANY, et al., | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Liberty Insurance Corporation's ("Liberty") motion to compel appraisal and to abate the lawsuit pending appraisal. (Doc. 7). Having carefully considered the parties' arguments, the underlying facts, and the applicable caselaw, this Court **GRANTS IN PART** Liberty's motion.

### I. Background

This is an insurance dispute. Plaintiffs Carson Castellaw and Kyle Castellaw's (collectively, the "Castellaws") property was insured under a policy issued by Liberty. After their property sustained damage from a plumbing leak, the Castellaws filed a claim with Liberty. Liberty and the Castellaws exchanged bids for a few months but ultimately disagreed over the amount of damage to the home. Although Liberty made some payments to the Castellaws, they were still frustrated with Liberty's claim-handling. No movement happened on their claim for months despite the Castellaws' efforts. Then, the Castellaws' pre-suit notice letter reignited negotiations between

1

the parties, including exchanging bids, retaining contractors, and conducting independent inspections of the property.

But negotiations still fell through, and the Castellaws filed suit on August 7, 2023. On August 8, 2023, Liberty responded that negotiations finally reached an impasse, and therefore invoked the right to appraisal under their contract. The Castellaws first agreed to the appraisal and named an appraiser. Then, they revoked their consent. They argued they agreed to the appraisal only under duress because Liberty forced them to appoint and appraiser within a short time limit. In response, Liberty filed the instant motion before the Court.

## II. Legal Standard

"Contract interpretation is a purely legal issue[.]"[1] In diversity cases, "we interpret the contract at issue under Texas law."[2] "[T]he rules of construction and interpretation applicable to contracts" generally control insurance policies.[3]

"Appraisal clauses, a common component of insurance contracts, spell out how parties will resolve disputes concerning a property's value or the amount of a covered

---

[1] *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004).

[2] *Id.*

[3] *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857, 858 (5th Cir. 2006).

loss."[4]   Texas law and public policy strongly favors the enforcement of appraisal clauses.[5]   Such clauses "are generally enforceable, absent illegality or waiver."[6]

An opposing party can assert the affirmative defense of waiver "against a party who either intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right."[7]   As an affirmative defense, the party asserting waiver bears the burden of proof.[8]   Waiver is ordinarily a question of fact, but where the facts are admitted or clearly established, it becomes a question of law.[9]

### III. Analysis

### A. Appraisal

In the present case, Liberty moves to compel appraisal.  Neither party disputes the validity of the contract.  Instead, the Castellaws contend that Liberty waived its right to appraisal.

To establish waiver, the Castellaws must prove three elements: (1) the parties reached an impasse in negotiations, (2) after that impasse, an unreasonable time

---

[4] *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 405 (Tex. 2011).

[5] *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 894 (Tex. 2009)

[6] *Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d at 407.

[7] *Tenneco Inc. v. Enter. Products Co.*, 925 S.W.2d 640, 643 (Tex. 1996).

[8] *JM Walker LLC v. Acadia Ins. Co.*, 356 Fed. App'x 744, 748 (5th Cir. 2009).

[9] *Tenneco, Inc.*, 925 S.W.2d at 643.

passed before Liberty invoked the appraisal clause, and (3) that unreasonable delay prejudiced the Castellaws.[10]

First, the parties agree that they reached an impasse, although they disagree when it occurred.  Liberty admits they reached an impasse in August 2023, just before Liberty invoked appraisal.  But the Castellaws believe they were at an impasse long before that—in January 2023, when Liberty was slow to respond to inquiries about their claim—and Liberty failed to invoke the process until seven months later.

The facts do not support the Castellaws' assertion.  To show the parties reached an impasse in negotiations requires more than mere disagreement.[11]  Instead, the party bearing the burden of proof must show that "breakdown of good faith negotiations concerning the amount of the loss suffered by the insured" meaning "both parties must be aware that further negotiations would be futile, or would be of no effect if performed."[12]  "If one party genuinely believes negotiations to be ongoing, it cannot have intended to relinquish its right to appraisal."[13]

Here, although the parties disagreed about the Castellaws' claim in January 2023, their good faith negotiations did not break down then.  In fact, the Castellaws

---

[10] *See Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d at 406–12.

[11] *Id* at 408.

[12] *Id* at 409 (cleaned up).

[13] *Id*.

were still negotiating with Liberty at that time.  And both parties reiterated that they hoped to resolve the dispute amicably.

Moreover, Liberty's delayed responses alone do not prove an impasse occurred. The Castellaws contend that Liberty's unresponsiveness demonstrates that they were at an impasse in January 2023.  But to find that Liberty waived its right to appraisal because of its delays, the Castellaws must show that Liberty was negotiating in bad faith, that is, Liberty believed that "further negotiations would be futile" but continued to feign negotiations anyway.[14]  Liberty's delayed response time alone does not support this conclusion.  And there are no other indications that Liberty negotiated in bad faith.  Therefore, the parties' negotiations broke down and the parties reached an impasse on August 7, 2023, when the Castellaws filed suit.

Liberty invoked appraisal on August 8, 2023, the day after the Castellaws filed suit.  There was no delay and certainly not an unreasonable one.[15]  Therefore, the Castellaws failed to show the second element of waiver, that Liberty unreasonably

---

[14] *Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d at 409.

[15] *Cano v. Lloyds*, No. 3:14-CV-2720-L, 2016 WL 3659040, at *4 (N.D. Tex. Feb. 11, 2016) (Ramirez, M.J.) (finding a thirteen-day delay between an impasse and invoking appraisal reasonable); *Hayley v. Meridian Sec. Ins. Co.*, No. 7:22-CV-00036-O, 2022 WL 18859312, at *3 (N.D. Tex. Oct. 17, 2022) (O'Connor, J.) (finding a six week delay unreasonable).

delayed in invoking the process, and have failed to establish Liberty waived the appraisal clause.

## B. Abatement

"Federal district courts sitting in diversity and applying Texas law have, in most cases, declined to abate litigation pending appraisal where questions of coverage remain."[16]  A valid appraisal does not divest the district court of jurisdiction, rather, it only binds the parties to have the extent or amount of the loss determined in a particular way.[17]  Here, the amount of loss is only a part of the dispute.  The parties also dispute coverage, and the Castellaws brought claims against Liberty for breach of contract and breach of the implied duty of good faith and fair dealing for failing to comply with their duties after loss under the policy.   Merely appraising the damage will leave issues in this case unresolved, and therefore, the Court concludes that abatement is improper here.

## IV. Conclusion

Consistent with the discussion above, the Court **GRANTS IN PART** the motion to compel appraisal and otherwise **DENIES** the motion.   (Doc. 7). Accordingly, the Court **ORDERS** the parties to participate in the appraisal process as set forth in the insurance policy.  The Court further **ORDERS** the parties to

---

[16] *Carter v. Underwriters at Lloyd's, London*, No. 7:17-CV-00127-O, 2018 WL 10483854, at *2 (N.D. Tex. July 27, 2018) (O'Connor, J.).

[17] *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 889 (Tex. 2009).

submit a joint report within 30 days of entry of this order regarding the status of the appraisal.

      **IT IS SO ORDERED** this 20th day of February, 2024.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE